**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Gary Austin, | ) | No. CV-12-02233-PHX-FJM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Horizon Human Services. Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

The court has before it defendant Horizon Human Services, Inc.'s motion for summary judgment (doc. 42), plaintiff's response (doc. 48), and Horizon's reply (doc. 49). Plaintiff filed this action against his former employer Horizon Human Services, asserting discrimination and retaliation under the Americans with Disabilities Act (ADA), and violation of the Employee Retirement Income Security Act (ERISA).

## I. Background

Horizon is a non-profit behavioral health agency licensed by the State of Arizona to provide outpatient and residential mental health services. Horizon hired plaintiff on December 13, 2010, as a Behavioral Health Technician in its Payson, Arizona office. When he was hired, plaintiff received and signed Horizon's Employee Conduct Policy, which prohibited employees from engaging in social, business, or personal relationships with participants of Horizon's services.

1   Shortly after plaintiff was promoted to Case Manager on April 30, 2011, performance
2   issues surfaced.  On May 9, 2011, plaintiff received a Letter of Concern for his failure to
3   timely complete clinical paperwork.  On February 6, 2012, he received another Letter of
4   Concern, this time for his failure to comply with Horizon's requirements regarding
5   paperwork corrections.  On February 9, 2012, plaintiff was placed on a formal Plan of
6   Correction when it was discovered that he had taken steps to adopt a foster child who was
7   a Horizon client.  Plaintiff had spoken with the child, the child's foster parents, and Child
8   Protective Services about adopting the child, all without informing his supervisor of his
9   plans.  As a result, Horizon was forced to terminate plaintiff's professional relationship with
10  the child and the child's foster family.

11  As a condition of the formal Plan of Correction, plaintiff was placed on disciplinary
12  probation and was required to receive individual supervision focused on employee conduct,
13  dual relationships, and professional boundaries.  Plaintiff was told that failure to complete
14  the Plan of Correction would result in termination of his employment.

15  On March 23, 2012, while plaintiff was still on probation and under the Plan of
16  Correction, plaintiff's son became ill and was hospitalized for four months.  As a result of
17  his son's illness, plaintiff requested and was granted intermittent leave.  Horizon altered
18  plaintiff's work schedule so that he only worked three days a week.  Plaintiff's son's hospital
19  bills exceeded $200,000 a month.

20  In May 2012, plaintiff asked to be taken off probation.  However, Horizon's CEO,
21  Norman Mudd, extended plaintiff's probation until July 9, 2012, explaining that because
22  plaintiff was working three days a week during much of the probation period, Horizon
23  wanted more time to evaluate him.  On June 14, 2012, plaintiff's coworker was promoted to
24  the position of Program Coordinator.

25  In June 2012, Horizon discovered that plaintiff had misrepresented that he was
26  authorized to oversee a client's court-ordered community service.  Plaintiff knowingly
27  created false documents representing to the client's probation officer that the client had
28  performed community service work on specific days.  As a result, plaintiff was terminated

effective June 25, 2012.  Plaintiff filed a charge of discrimination with the EEOC on July 17, 2012, alleging that he was fired because of the cost of his son's illness on Horizon's health plan.

After plaintiff was terminated, the local newspapers in Payson began running articles about plaintiff and his termination.  On July 11, 2012, the Payson Roundup published an article stating that plaintiff "was fired for allegedly seeking to adopt a foster child he had counseled," and that plaintiff suspected that the cost of his son's healthcare on Horizon's healthcare plan played a role in his termination.  DSOF ¶ 27.  The Payson Roundup published a second article on July 31, 2012, stating that plaintiff "believes he was fired because [his son's] medical crisis put an incredible strain on the company's medical insurance, which will certainly increase its insurance premiums." DSOF ¶ 28. Plaintiff also began posting comments on his Facebook page accusing Horizon of terminating him because of his son's medical bills.

On August 21, 2012, Horizon filed a defamation lawsuit against plaintiff in the Superior Court of Arizona in Gila County.  On October 18, 2012, plaintiff filed this action against Horizon.

## II.  ADA Discrimination

Plaintiff alleges "association discrimination" under the Americans With Disabilities Act.  He contends that Horizon discriminated against him because of his association with his son who has a disabling condition.  The ADA prohibits employers from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).  Title VII governs the analytical framework of the ADA. Raytheon Co. v. Hernandez, 540 U.S. 44, 49, 124 S. Ct. 513, 517 (2003); Budnick v. Town of Carefree, 518 F.3d 1109, 1113-14 (9th Cir. 2008).  Therefore, in order to establish a prima facie claim of association discrimination under the ADA, plaintiff must show: (1) he was qualified to perform the job; (2) his employer knew he had a relative or associate with a disability; (3) he was subjected to an adverse employment action; and (4) there is a causal

1    connection between the adverse employment action and the employee's association with a

2    disabled person.  See Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1085 (10th Cir.

3    1997); E.R.K. ex rel. R.K. v. Hawaii Dept. of Educ., 728 F.3d 982, 992 (9th Cir. 2013).

4          Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to

5    the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment

6    action.  Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004).  The burden then

7    shifts back to the plaintiff to "demonstrate a triable issue of fact as to whether such reasons

8    are pretextual."  Id.  Plaintiff must offer specific and substantial evidence of pretext in order

9    to survive summary judgment.  Noyes v. Kelly Servs., 488 F.3d 1163, 1170 (9th Cir. 2007).

10   An employer is only required to offer its honest reasons for its actions, even if the reasons

11   are "foolish, trivial or even baseless."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,

12   1063 (9th Cir. 2002).

13         Plaintiff claims that he suffered three adverse employment actions—his probation was

14   extended, he was not given a promotion, and his employment was terminated.  To establish

15   his prima facie case, plaintiff shows that he was qualified to perform his job, Horizon knew

16   that his son was hospitalized, and he was subjected to adverse employment actions.  Plaintiff

17   has not established, however, any causal connection between the adverse employment actions

18   and his association with his disabled son.  He speculates that Horizon acted in order to

19   minimize the financial burden on its health insurance program, but he offers no evidence to

20   support the claim.  Plaintiff cannot establish a prima facie case of discrimination based on

21   speculation.  Even if we assume that plaintiff has satisfied the relatively minimal burden of

22   establishing a prima facie case, we would nevertheless conclude that he has not presented

23   "specific and substantial" evidence showing that Horizon's reasons for its actions were

24   pretext for discrimination.

25         When plaintiff began receiving Letters of Concern and was first placed on the formal

26   Plan of Correction and probation, his son was not ill.  Thus, plaintiff acknowledges that these

27   disciplinary actions were not the result of any illegal motive by Horizon.  DSOF ¶ 14.

28   Horizon asserts that plaintiff's probation was extended for an additional two months because

he was only working part-time throughout most of the original probation period.  He was passed over for promotion because he was on probation and therefore not eligible for a promotion, and because he had not applied for the position.  And he was terminated from employment because he created false community service records for a client.  These are all legitimate, nondiscriminatory reasons for Horizon's actions.  Therefore, plaintiff bears the burden to show, with specific and substantial facts, that Horizon's reasons are merely pretext for discrimination.

To show pretext, plaintiff argues that his probation was extended to keep him from accessing his benefits and to make it easier to fire him.  PCSOF ¶ 20.  But this reason is unrelated to his association with his disabled son and accordingly defeats his ADA association claim.  He also speculates that Horizon terminated him in order to reduce the impact of his son's medical bills on Horizon's insurance premium.  He contends that Horizon has a long history of firing employees who get sick and use the company health plan.  But one of the individuals he alleges was forced to quit because of her disability was never released to work by her doctor, and another employee was not enrolled in the company's health plan.  DSOF ¶ 42.  Plaintiff's speculation about the reasons for Horizon's actions is insufficient to defeat summary judgment.

With respect to the failure to promote claim, plaintiff argues that the individual who was promoted, Raymond Dion, was less qualified for the promotion.  However, defendants show that plaintiff was on a corrective action plan at the time of the promotion, and therefore he was ineligible for promotion.  Moreover, while plaintiff had applied for the position when it was previously open, he did not submit an application for the current opening.  His argument that his original application "still stood," Response at 2, is unsupported.

With regard to the termination claim, plaintiff asserts that, although he admittedly fabricated the dates on the community service forms, the client nevertheless actually performed the community service work.  But it is undisputed that plaintiff made a deliberately false report with regard to a client's community service forms.  Plaintiff acknowledged that he "did not want to waste hours looking through hundreds of notes to find

exact dates." DSOF ¶ 25.  His own belief that his actions were justified does not create a triable issue of pretext.

Plaintiff has failed to raise a genuine issue of fact demonstrating that Horizon's reasons for the extended probation, the refusal to promote, or the termination were a mere pretext for discrimination.   Absent any evidence that Horizon's decision was for discriminatory reasons, plaintiff's ADA discrimination claims cannot survive summary judgment.

### III.  ADA Retaliation

Plaintiff also argues that Horizon retaliated against him because he filed an ADA discrimination claim with the EEOC after he was terminated.  He contends that as a result of the EEOC discrimination charge, Horizon filed a defamation lawsuit against him and ordered an investigation into a cell phone video of an altercation between plaintiff, his wife, and their child, which was viewed by Horizon employees.  Horizon eventually reported the actions of plaintiff and his wife to Child Protective Services.  Plaintiff had not worked for Horizon for over six weeks when Horizon took these alleged retaliatory actions.  Amended Compl. ¶ 77.

To establish a prima facie claim for ADA retaliation, plaintiff must show that (1) he engaged in protected activity, (2) he was subjected to an adverse employment action, and (3) there was a causal link between the protected activity and the employer's actions.  Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003).  The Supreme Court has recently held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Id.  Although the Ninth Circuit has not had an occasion to apply Nassar to ADA retaliation claims, the court has consistently applied the Title VII framework to ADA retaliation claims.  Accordingly, ADA retaliation claims are properly subject to a but-for causation standard.  See Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1121 (9th Cir. 2000) (adopting the Title VII framework for ADA retaliation claims), vacated

on other grounds sub nom. U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002). Plaintiff must show that the filing of his EEOC complaint was the but-for cause of Horizon's decision to send him a demand letter, sue him for defamation, and investigate and report him to Child Protective Services.

Plaintiff has not demonstrated that Horizon would not have filed the defamation action but for plaintiff's filing of the EEOC charge. Instead, the undisputed evidence shows that after his termination plaintiff had begun a campaign to disparage Horizon on Facebook and through the local newspaper, accusing Horizon of terminating him because of his son's illness. Horizon also shows that as a behavioral health organization, it has a policy of reporting any potential child abuse that it discovers. Plaintiff's own speculation that Horizon filed the lawsuit or reported suspected child abuse because of the EEOC charge is neither specific nor substantial, and in no way undermines the reason proffered by Horizon for its actions. Defendants' motion for summary judgment on the ADA retaliation claim is granted.

## IV. ERISA

Plaintiff's ERISA claim is premised on the same facts underlying his ADA claims. He speculates that Horizon terminated him because of the high costs associated with his son's medical care.

ERISA prohibits employers from discharging employees for exercising their rights under an employee benefits plan or from interfering with the attainment of a right that they may become entitled to under the plan. 29 U.S.C. § 1140. In order to prevail on a § 1140 claim, a claimant must show that his employment was terminated because of a specific intent to interfere with ERISA rights. Dytrt v. Mountain States Tel. & Tel. Co., 921 F.2d 889, 896 (9th Cir. 1990). "[N]o action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination." Id.

Here, the undisputed evidence shows that plaintiff was terminated after he falsified paperwork. Other than plaintiff's own speculation, there is no evidence that plaintiff was terminated because of his son's medical care. Summary judgment is granted in favor of defendants on plaintiff's ERISA claim.

1

**V.  Conclusion**

2

**IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 42).

3

The clerk shall enter final judgment.

4

DATED this 19th day of March, 2014.

5

6

_Frederick J. Martone_

7

Frederick J. Martone
Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28